UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JEFFREY S. SEXTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.  4:04 CV 773 CDP |
| vs. | ) | |
| | ) | |
| CONSUMER PROGRAMS, INCORPORATED, | ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS SUMMARY JUDGMENT MOTION

The defendant, Consumer Programs, Incorporated ("Defendant" or "CPI"), by its attorneys, presents its memorandum of law in support of CPI's motion for summary judgment on the breach of contract claim filed by the plaintiff, Jeffrey S. Sexton ("Plaintiff" or "Sexton"), against CPI.  By his breach of contract action, Sexton seeks to enforce the terms of Defendant's severance pay and severance benefits plan.  The Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1453 (2002 online ed.) ("ERISA"), preempts all common law claims seeking to enforce a welfare plan, such as CPI's severance pay and severance benefits plan. Thus, Sexton's breach of contract claim states no claim upon which this Court may grant any relief, as a matter of law.  Consequently, CPI deserves summary judgment in its favor and against Sexton on Plaintiff's breach of contract claim.

### STATEMENT OF THE FACTS

Defendant has simultaneously filed Defendant's Statement of Undisputed Material Facts ("Defendant's Statement") with this memorandum pursuant to this Court's Rule 7-4.01(E). Defendant's Statement describes the facts relevant to CPI's summary judgment motion.  By this

reference, Defendants adopts the contents of Defendant's Statement as its statement of the facts

for this memorandum.

ARGUMENT

I.     THE AGREEMENT'S SEVERANCE PAY AND BENEFITS PROVISIONS
       ESTABLISH AN ERISA PLAN.

ERISA defines an employee benefit plan as "an employee welfare benefit plan or an

employee pension benefit plan." 29 U.S.C. § 1002(3).  The statute further includes a definition

of "an employee welfare benefit" as "any plan, fund, or program . . . established or maintained . .

. for the purpose of providing for its participants [specified] benefits."  *Id.*  Those benefits

include severance benefits.  *See, e.g., Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 7 n.5

(1987) (examining the definition of employee welfare plan and concluding it includes severance

benefit plans); *Kulinski v. Medtronic Bio-Medicus, Inc.*, 21 F.3d 254, 256 (8th Cir. 1994);

*Wallace v. Firestone Tire & Rubber Co.*, 882 F.2d 1327,1329 (8th Cir. 1989).

ERISA also defines an employee pension plan.  For that definition, the statute states as

follows:

> any plan, fund, or program . . . to the extent that by its express terms or as a result
> of surrounding circumstances such plan, fund, or program—(i) provides
> retirement income to employees, or (ii) results in a deferral of income by
> employees for periods extending to the termination of covered employment or
> beyond.

29 U.S.C. § 1002(2)(a).

At a minimum, ERISA envisions the administration of benefits in accordance with a plan

of some sort.  In other words, ERISA regulates those benefits whose provision by their very

nature involves ongoing administration to meet the employer's obligation.  *Fort Halifax*, 482

U.S. at 11.

2

The Eighth Circuit, moreover, has identified the hallmarks as to whether a particular plan involves ongoing administration as follows:

    (1)    whether the payments are one-time lump sum payments or continuous payments;

    (2)    whether the employer undertook any long-term obligation with respect to the payments;

    (3)    whether the severance payments come due upon the occurrence of a single, unique event or any time that the employer terminates employees; and

    (4)    whether the severance arrangement under review requires the employer to engage in a case-by-case review of employees.

*Petersen v. E.F. Johnson Co.*, 366 F.3d 676, 679 (8th Cir. 2004); *Crews v. Gen. Am. Life Ins. Co.*, 274 F.3d 502 506 (8th Cir. 2001); *Emmenegger v. Bull Moose Tube Co.*, 197 F.3d 929, 934-35 (8th Cir. 1999); *Kulinski*, 21 F.3d at 256-58.

In this case, the application of the Eighth Circuit's hallmarks of ERISA welfare plans to the Agreement's severance plan establishes its status as an ERISA plan. First, the Agreement could require any of no severance pay, severance pay in a sum equal to Sexton's annual Base Salary paid in 26 equal bi-weekly installments, or a lump sum payment equal to an amount twice Plaintiff's annual Base Salary. Plaintiff's Petition, Exhibit 1 at 13 (§ 6(c)(1)-(2)). To determine whether Sexton receives severance pay and, if so, its amount and the terms of its payment requires the following determinations:

    1.    whether Defendant terminated Plaintiff's employment;

    2.    if so, whether a Change of Control preceded CPI's termination of Sexton's employment; and

    3.    if Defendant fired Plaintiff, whether CPI had Cause of its dismissal of Sexton.

If Plaintiff resigns his employment, then he receives no severance pay. If Defendant fires Sexton for Cause, the Agreement similarly denies severance pay to him. If CPI dismisses Plaintiff without cause and before a Change of Control, then his severance pay equals a sum in the amount of his annual Base Salary paid in 26 equal bi-weekly installments. Finally, if Defendant discharges Sexton without Cause after a Change of Control, then the Agreement provides him with a lump sum in an amount equal to twice his annual Base Salary. *Id.*; Defendant's Statement at ¶5.

Thus, the Agreement envisions the alternatives of a lump sum payment of severance pay, periodic payments of severance pay over the course of one year, or no severance pay. The existence of these options resolve the first hallmark issue in favor of the status of the Agreement's severance plan as an ERISA plan. The repetition of substantially the same severance pay provisions in the employment agreements of other high level executives only increases the possibility for periodic payments over an extended period of time during the severance plan's administration. Defendant's Statement at ¶¶ 11-12.

In addition, the severance benefits include the Agreement's Supplemental Retirement Benefits. Only the involuntary termination of Plaintiff's employment with Cause disqualifies Sexton from those benefits. Plaintiff's Petition, Exhibit 1 at 10 (§ 5(i)(1)). The Agreement sets the Supplemental Retirement benefits at an annual benefit equal to the lesser of $150,000 or 40% of his annual Base Salary for ten years in 240 equal monthly installments. *Id.* at 10-11 (§ 5(i)(1)-(2)). The payment of those benefits begins in the month that Sexton reaches age 65 years. *Id.* at 11 (§ 5(i)(2)); Defendant's Statement at 6-9. The Supplemental Retirement Benefits furnish periodic payments over an extended period that satisfy the first hallmark's use of such payments as a defining element of an ERISA plan.

4

The second hallmark concerns whether the employer undertook any long-term obligation with respect to payments. The Agreement's severance plan also meets this threshold. Depending on the circumstances of Sexton's employment, he could receive 26 equal installments of severance pay biweekly. In addition, if eligible for Supplemental Retirement Benefits, the Agreement envisions his receiving monthly payments for 20 years upon his reaching age 65 years. *See Petersen*, 366 F.3d at 679.

The Agreement's severance plan also fulfills the third hallmark of an ERISA plan. It provides benefits depending on the individual circumstances of Sexton's employment as opposed to because of a single, unique event, such as a plant closing or CPI's merger with or acquisition by another business. *Id.* Again, the substantially the same severance pay and benefits provisions in the employment agreements of CPI's other high level executives shows the severance plan's broader reach than employment terminations caused by singular events. Defendant's Statement at ¶ ¶ 11-12.

Finally, the severance plan included in the Agreement requires CPI to do a case-by-case assessment of the circumstances of the termination of each employee to which it applies. No singe event initiates a one-time payment to each of Defendant's high level executives with employment agreements that contain substantially the same severance plan provisions in them. The eligible executives could experience involuntary terminations without Cause either individually or in groups. Such terminations could take place at any time for as long as CPI has executives in the severance plan. *See id.* at 679-80; *Emmenegger*, 197 F.3d at 935.

As previously mentioned, certain types of employment terminations exempt the executive from the severance pay plan altogether—terminations for Cause, terminations because of death or permanent disability, or resignations. In addition, when CPI terminates the employment of an

5

executive, then it must determine whether a Change of Control preceded that termination and whether it discharged the executive either with or without Cause. Defendant must make determinations regarding these factors as any particular executive's employment ends at CPI's behest. In short, the severance plan awards benefits neither automatically nor mechanically. *Id.*; *Kulinski*, 21 F.3d at 257. These types of determinations require an administrative scheme that establishes the Agreement's severance plan as an ERISA plan.

## II.    ERISA PREEMPTS SEXTON'S BREACH OF CONTRACT CLAIM AS A MATTER OF LAW.

The status of the Agreement's severance pay and benefits plan as an ERISA plan requires the dismissal of Plaintiff's breach of contract claim. ERISA preempts all common law causes of action that relate to any employee benefit plan. *Eide v. Grey Fox Technical Services Corp.*, 329 F.3d 600, 604 (8th Cir. 2004); *Crews*, 274 F.3d at 505; 29 U.S.C. § 1144(a). ERISA's preemption provision limits any claim for benefits under an ERISA plan to those pursued exclusively through ERISA's enforcement scheme. 29 U.S.C. § 1132; see *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 52-57 (1987); *Metropolitan Life v. Taylor*, 481 U.S. 58, 62-63 (1987).

In this case, Sexton has alleged a breach of contract claim by which he seeks to enforce the severance pay and benefits plan contained in the Agreement. Plaintiff's Petition at ¶¶ 5-13. In so doing, his breach of contract claim refers to or has a connection to an ERISA plan. *See, e.g., Eckelkamp v. Beste*, 315 F.3d 863, 870 (8th Cir. 2002) (citing *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983). Fundamentally, Sexton's breach of contract claim asserts a claim for benefits under CPI's severance pay and benefits plan for its high level executives and challenges Defendant's administrative and fiduciary responsibilities regarding that plan. Thus, Plaintiff's claims have direct connections to CPI's severance pay and benefits plan for its high level executives. As a matter of law, ERISA preempts Sexton's breach of contract claim and requires

6

its dismissal with prejudice.   Consequently, Defendant deserves an order from this Court

granting summary judgment in CPI's favor and against Sexton that dismisses Plaintiff's breach

of contract claim with prejudice at Sexton's cost.

### III.    CONCLUSION.

In closing, CPI established a severance pay and benefits plan by incorporating

substantially the same provisions in the employment agreements of six of its high level

executives, including Sexton.  The severance plan involves an ERISA plan.  First, it requires

periodic payments to eligible executives of either severance pay or Supplemental Retirement

Benefits, or both.  Second, CPI has undertaken a long-term obligation to provide such payments

to eligible executives for periods of up to 20 years.  Third, no unique event initiates CPI's

severance pay and benefits obligations, such as a plant closing.  Rather, the termination of an

eligible executive's employment activates Defendant's obligations under its severance plan.

Finally, the determination of an executive's eligibility for benefits requires a case-by-case

assessment of the circumstances surrounding her or his employment's termination.

Consequently, CPI's severance plan satisfies the criteria that the Eighth Circuit has recognized as

hallmarks of an ERISA plan.

The status of Defendant's severance plan for its high level executives as an ERISA plan

makes ERISA the law that governs claims involving that plan.  ERISA preempts all common law

actions that relate to or have any connection to an ERISA plan.  Sexton's breach of contract

claim asserts a claim for benefits under CPI's severance plan for its high level executives.

Consequently, ERISA preempts that claim and requires its dismissal with prejudice at Plaintiff's

cost, as a matter of law.  Therefore, the claim alleged in Plaintiff's Petition supports an order

from this Court granting summary judgment in Defendant's favor and against Plaintiff.

7

Respectfully submitted,

Gerald M. Richardson, E.D. No. 4167
Matthew B. Robinson, E.D. No. 598731
The Lowenbaum Partnership, L.L.C.
222 South Central, Suite 901
St. Louis, MO 63105
Phone: (314) 746-4830
Fax: (314) 746-4848

ATTORNEYS FOR DEFENDANT
CONSUMER PROGRAMS, INCORPORATED

Dated:        June 29, 2004

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was served upon Jerome J. Dobson, Jonathan C. Berns, Gregory A. Rich, and Michelle Dye Neumann, Weinhaus, Dobson, Goldberg & Moreland, 906 Olive St., Suite 900, Saint Louis, Missouri 63101, either through the electronic case filing system of the United States District Court for the Eastern District of Missouri, Eastern Division, or if necessary, by depositing a copy of the same in the U.S. mail, postage prepaid, this 29th day of June 2004.

8