UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JEFFERY S. SEXTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:04CV773 CDP |
| ) | |
| CONSUMER PROGRAMS, INC., ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM AND ORDER**

Plaintiff Jeffery S. Sexton, a former executive for defendant Consumer Programs, Incorporated (CPI), has moved to remand this breach of contract action to the Circuit Court for the City of St. Louis, where he originally filed this case. CPI removed this case to this Court, alleging that the claims were preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1000, et seq. Plaintiff claims that his state law contract claims are straightforward and not preempted by ERISA.

I agree with CPI that the employment agreement is an "employee benefit plan" under ERISA, as it has been interpreted by the Court of Appeals. There is subject matter jurisdiction over the claims at issue, and so I will deny plaintiff's motion to remand.

## DISCUSSION

Jeffrey S. Sexton worked for CPI as Executive Vice President and Chief Information Officer from March 2003 through early May 2004. He alleges he was dismissed without cause following a change in control of the company. Sexton claims that he is owed money under the employment agreement with CPI.

In his complaint, Sexton seeks damages for breach of contract. Although the motion to remand discusses only the severance pay covered by the employment agreement, his complaint seeks more. Among other things, Sexton has requested "all benefits owing under the agreement," and a permanent injunction ordering CPI to pay "all sums due him under the employment agreement, including plaintiff's severance pay." The demand letter attached to Sexton's complaint sheds light on some of the additional benefits requested, which include such items as "supplemental retirement benefits to which Mr. Sexton is entitled as a result of the change of control" and the "Gross-Up for Parachute Tax set out in Section 7 of the Employment Agreement."

ERISA preempts any common-law causes of action relating to employee benefit plans. ERISA defines an "employee benefit plan" as "an employee welfare benefit plan or an employee pension plan." In <u>Fort Halifax Packing Company, Inc. v. Coyne</u>, 428 U.S. 1 (1987), the Supreme Court held that a Maine statute that required employers to provide one-time severance payments to employees after a

plant closing neither related to nor established an ERISA plan. The Court stated that ERISA concerns only arise when benefits require an ongoing administrative program to meet the employer's obligation. The Maine statute did not require an employer to maintain any ongoing administrative program or any employee benefit plan. Id. at 11. Rather, the statute merely required a one-time, lump-sum payment of benefits, triggered by the single event of a plant closing. Id. at 12.

Since Fort Halifax, the Eighth Circuit has developed a four-factor test to guide the decision of whether an ongoing administrative scheme is required to administer severance payments: (1) whether the payments are one-time lump sum payments or continuous payments; (2) whether the employer undertakes a long-term obligation with respect to the payments; (3) whether the severance payments are due upon the occurrence of a single, unique event or at any time that the employer terminates the employee; and (4) whether the severance arrangement requires an employer to engage in a case-by-case review of the employees to determine benefits. Crews v. General American Life Insurance Co., 274 F.3d 502, 506 (8th Cir. 2001).

In Kulinksi v. Medtronic Bio-Medicus, Inc., 21 F.3d 254, 256-58 (8th Cir. 1994), the Eighth Circuit determined that an agreement was not an ERISA plan when it gave an employee severance benefits if he was terminated within one year of a hostile takeover or if he resigned for good reason within that time. Because the

agreement gave the <u>employee</u> complete discretion to decide if he had a good reason for resignation, once there was a hostile takeover and he was terminated or resigned, there was nothing left for the company to do but write a check. The court held that such a "simple, mechanical task does not require the establishment of an administrative scheme," and was therefore not an ERISA plan. <u>See</u> <u>also</u>, <u>Crews v. General American Life Insurance Co.</u>, 274 F.3d 502, 506 (8th Cir. 2001) (one-time, lump-sum payment given to terminated employees who worked in a specific department who stayed through a fixed date not an ERISA plan).

In <u>Emmenegger v. Bull Moose Tube Co.</u>, 197 F.3d 929 (8th Cir. 1999), the Eighth Circuit again applied the four factors to determine that ERISA covered an agreement giving employees a lump-sum payment when they were terminated if they had given excellent service and were not terminated for disciplinary reasons. <u>Id.</u> at 935. The court noted that employees eligible for benefits could be terminated singly or in groups, the terminations could take place at any time, and the terminations were likely to continue so long as the company had employees. Further, the employer had to make judgments as to whether an employee qualified for the payments, since the payments were not awarded automatically upon termination, but were instead made by an exercise of discretion.

More recently, in <u>Petersen v. E.F. Johnson Company</u>, 366 F.3d 676 (8th Cir. 2004), the Court applied the same test to find that a severance plan was covered by

- 4 -

ERISA.  The Court noted that the plan required continuation of medical benefits to be paid over time, monitoring payments to determine when the limits were met, and a case-by-case determination of whether a particular termination was with or without cause and whether there had been a change in control.  Id. at 679-680.

Applied to the facts of this case, the employment agreement at issue is governed by ERISA.  The first Crews factor, whether payments are one-time or continuous, slightly favors CPI.  While the contract stipulated that if Sexton were terminated without cause after a change of control he would be entitled to a lump-sum payment, it also stipulated that he would be entitled to twenty-six payments over a year if he were terminated without cause before a change of control.  The obligation is potentially more than a lump-sum payment.

The second Crews factor, whether the employer takes on a long-term obligation with respect to the payments, again favors CPI.  The lump-sum payment is certainly not a long-term obligation, though with termination under certain conditions the executive also becomes vested in certain retirement plans, but the twenty-six payments require a commitment that resembles a long-term obligation and is certainly more than just writing a check. Many other provisions of the agreement, including the supplemental retirement benefits, impose a longer obligation on the employer.

The other factors also favor CPI.  The severance payments are not due any time CPI terminates an employee; rather, the obligation only arises when CPI terminates the executive without cause after a change of control.  As in Petersen and Emmenegger, this requires a case-by-case determination of whether there was a change in control and whether the termination was without cause.  Although plaintiff argues that these were easy determinations to make in this particular case, that does not mean that the determinations did not have to be made.  Further, section 7 of the employment agreement represents the case-by-case analysis that is required to determine the benefits due.  Section 7 deals with the "gross-up for parachute tax." This section sets forth an administrative scheme of considerable complexity, involving the selection of a Certified Public Accountant to determine the amount of excise taxes and gross-up payments that may be due to Sexton.  Further covered is the right of CPI to designate a tax representative and the assignment of refund proceeds; the agreement also contains provisions regarding the relations between Sexton and the tax representative in the event the IRS proposes an assessment or additional assessment of the excise tax against Sexton.

In sum, after considering all of the Crews factors, the employment agreement represents an ongoing administrative program to meet the employer's obligation, unlike the situations presented in Fort Halifax and Kulinksi.  The employment agreement is governed by ERISA, and I will deny Sexton's motion to remand.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to remand [# 7] is denied.

**IT IS FURTHER ORDERED** that no later than **December 17, 2004**, plaintiff shall file either an Amended Complaint recasting his claim as one under ERISA, or a response to defendant's motion for summary judgment.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 24th day of  November , 2004.